UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIENNE BENNETT,

        Plaintiff,

                                      Case number 05-72357

v.                                     Honorable Julian Abele Cook, Jr.

KEMPER NATIONAL SERVICES, INC., et al.,

        Defendants.

## ORDER

On September 29, 2006, this Court granted a judgment in favor of the Defendants, Kemper National Services, Inc., et al., after determining that the Plaintiff, Adrienne Bennett, was not a disabled person, as defined by the terms and conditions within a long term disability plan in which she was a participant. An appeal to the Sixth Circuit Court of Appeals followed. In a written decision on January 23, 2008, the Sixth Circuit Court of Appeals vacated the judgment of September 29, 2006, along with an instruction that this case be remanded to Broadspire Services, Inc. "for a full and fair review" consistent with its opinion. *Bennett v. Kemper Nat'l Servs.,* 514 F.3d 547 (6th Cir. 2008).

On February 22, 2008, the Court forwarded this case to Broadspire Services with a directive that a review of Bennett's claim be fully completed within a forty-five day period. On April 10, 2008, Aetna Life Insurance Company ("Aetna")[1] reviewed Bennett's claim anew and reaffirmed

---

[1]The responsibilities of the original claims administrator, Kemper National Services, were transferred to Broadspire Services, Inc. Although the record is not clear as to when this change of responsibility occurred, it appears that Aetna now performs the claims administration

1

its original conclusion that she was not eligible for Long Term Disability ("LTD") benefits. Thereafter, both parties filed motions with this Court which sought the same relief that, in essence, mirrored their same positions in this controversy. Following its review of the record in this cause and after incorporating the arguments that were proffered by the parties during a hearing on July 29, 2008, the Court grants Bennett's motion for entry of a judgment in her favor and, at the same time, denies the Defendants' motion for the same relief.

I.

Bennett has been afflicted with multiple sclerosis ("MS") and related symptoms since 1996. In May 2001, she took a medical leave from her position as a "Project Manager/Master Plumber" at Henry Ford Hospital Systems ("Henry Ford") due to her illness. While employed at Henry Ford, Bennett participated in the Henry Ford Health System Short and Long Term Disability Insurance Plan ("the Plan").[2] After receiving LTD benefits for a period of twenty-four months under the Plan's "own occupation" standard, Bennett's claim for LTD benefits under the "any occupation" standard was denied.[3]

II.

---

for the Lumbermens Mutual Casualty Company ("Lumbermens"), which is corporate entity that is financially responsible for satisfying any judgment in this matter.

[2]This Plan was insured by Lumbermens.

[3]The Plan provided that LTD benefits for the first twenty-four months were to be provided if a successful claimant had a disability (physical or mental) which prevented the employee "from performing, during the Benefits Qualifying Period and the following 24 months, the Essential Functions of [the employee's] Regular Occupation . . . ." After the twenty-four month period, the Plan evaluates beneficiaries on the basis of "any occupation" standard which requires that "[the employee] must be prevented from performing the Essential Function of any Gainful Occupation that [his or her] training, education, and experience would allow [that employee] to perform."

Inasmuch as the parties' arguments during a hearing on July 29th were focused on whether Aetna had "arbitrarily and capriciously" rejected Bennett's application for LTD benefits on remand in violation of the Sixth Circuit's published opinion in *Bennett,* the Court will initially summarize that decision. *Bennett,* 514 F.3d at 549.

The *Bennett* Court first examined the applicable standard of review. It found that where benefit plans give the claim administrator discretionary authority to determine eligibility for benefits, the claim administrator's decision will be reversed only if it is "arbitrary and capricious." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). Under this standard, the claim administrator's decision should be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir. 2006). Although this standard is deferential, it "is no mere formality." *Id.* Rather, courts are required "to review the 'quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Id.* (quoting *McDonald v. W.- S. Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)).

The Sixth Circuit next noted that it had recently "addressed a situation where the [claim] administrator assisted the plaintiff in obtaining Social Security disability benefits, and then, without explanation, determined that for purposes of LTD benefits, the plaintiff was not disabled." This raised two primary concerns for the court in *Glenn*:

> [T]he fact that MetLife and the Social Security Administration reached contrary conclusions regarding Glenn's disability status has two ramifications for this appeal. The first stems from the fact that MetLife assisted Glenn in obtaining Social Security benefits and reaped a financial benefit of its own when that assistance was successful. The second issue relates to the fact that, in denying Glenn continuation of her long-term benefits, MetLife failed to address Social Security's contrary determination of Glenn's status.

*Glenn,* 461 F.3d at 667. In *Glenn*, the court also found that "an ERISA claim administrator's

3

failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Id.* at 669. The court concluded that "[h]aving benefitted financially from the government's determination that Glenn was totally disabled, [the claim administrator] obviously should have given appropriate weight to that determination." *Id.*

In *Bennett*, the court found that the Defendants, when issuing their denial of LTD benefits to Bennett, failed to explain why they had reached a conclusion which was contrary to that of the Social Security Administration ("SSA").[4] *Bennett,* 514 F.3d at 553. The *Bennett* court also discussed the Defendants' "decision to conduct only a file review." *Id.* at 554. The court noted that while it found "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005), "a plan's decision to conduct a file-only review–'especially where the right [to conduct a physical examination] is specifically reserved in the plan–may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Elliott v. Metro Life Ins. Co.,* 473 F.3d 613, 621 (6th Cir. 2006) (quoting *Calvert*, 409 F.3d at 295). In *Calvert*, the court stated that it was unable to credit the conclusions reached in the file review when the reviewer based his conclusion that the plaintiff was not disabled on adverse credibility determinations and when the reviewer's conclusion stood in direct conflict with objective medical data in the record. *Calvert*, 409 F.3d at 296-97.

---

[4]The court stated that "[s]imilarly, in the case at bar, Kemper provided Bennett with assistance in obtaining Social Security disability benefits, and under the Plan, was entitled to reduce the amount of benefits it paid to Bennett by the amount Bennett received from Social Security. When Broadspire issued its decision denying LTD benefits, it failed to explain why it reached a conclusion contrary to that of the SSA." *Bennett*, 514 F.3d at 553.

The *Bennett* court found similar concerns in the present case. First, the Defendants relied only on peer reviews of Bennett's files, although the Plan gave them the right to conduct a physical examination (the court also noted that neither of the file reviewers addressed the SSA's determination that Bennett was disabled and could not perform any job in the national economy, thus raising concerns about the thoroughness and accuracy of the file reviews). Second, one of the file reviewers found that Bennett was not credible even though (1) he had never physically examined her, and (2) none of Bennett's physicians had ever cited any concerns that their patient was malingering (with one physician theorizing that her "profile is more suggestive of depression than frank malingering, which was corroborated by objective personality test results. Rather than a conscious attempt to feign cognitive symptoms for monetary secondary gain, [] *Bennett presented as having difficulties adjusting to and accepting the limitations associated with MS.*" *Bennett*, 514 F.3d at 555. (emphasis added). Third, the court expressed concerns that one of the file reviewers, Dr. Goldberg ("Goldberg"), was inconsistent in his findings:

> In 2001, Goldberg originally concluded that Bennett was not able to perform her own job. In his 2003 file review, he noted that Lisak indicated that Bennett had a Class 4 impairment, cannot stand or walk, can sit for only two hours a day, and cannot work, but Goldberg then concluded that Bennett does not have "a functional impairment that would preclude [her] from either doing her own job or working at any job, particularly in a sedentary capacity." J.A. at 321 (Goldberg Review at 4). Goldberg reached this conclusion without any explanation as to why he did not agree with Lisak's assessment. To the extent that Goldberg agreed with Lisak's assessment, *we fail to understand how a person who can sit for only two hours in an eight-hour work day and cannot stand or walk for any appreciable period of time could, nonetheless, work*. *Id.* (emphasis in original).

The court concluded that the file reviews did not adequately explain why the reviewers (1) reached decisions which were contrary to the findings of the SSA and the medical evidence that had been made available to them through the reports of Bennett's treating physicians, (2) concluded that the

5

file reviews merely summarized Bennett's medical records, and (3) asserted in a conclusory manner that Bennett was able to work. The court declared, "we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility. Our concerns with the file reviews in this case weigh significantly in favor of a finding that the final decision was arbitrary or capricious." *Bennett*, 514 F.3d at 555. Finally, the *Bennett* court found that the Broadspire Service's determination was both arbitrary and capricious.[5]

### III.

The issue before this Court is whether the Defendants, through their claim administrator, Aetna, arbitrarily and capriciously denied Bennett's claim for LTD benefits in contravention of the

---

[5]The court made the following declaration: "Our review of the record leads us to conclude that Broadspire's decision was not made as the result of 'a deliberate, principled reasoning process.' *Glenn*, 461 F.3d at 666. As we have discussed earlier in this opinion, the defendants assisted Bennett in obtaining disability benefits from the SSA, reaped financial benefits from this decision, and then Broadspire failed to explain why it reached a disability conclusion at odds with the SSA's findings. Similarly, the file reviews which Broadspire relied upon in denying Bennett's claim offer no discussion about the SSA's disability determination. We are also troubled by Broadspire's reliance on file reviews that imply that Bennett is not credible, when in fact, no one who actually examined Bennett reached that conclusion. Further, Broadspire's reliance on a file report that acknowledges that Bennett cannot walk or stand and can only sit for two hours and that conclusorily asserts that she can work in a sedentary capacity demonstrates a lack of principled reasoning.

We finally register our serious concern that the final denial letter fails to explain the reasons for its decision. The three-page letter uses approximately one page to explain the standard for own-occupation disability. The next page simply lists the approximately ninety documents which were included in the review of Bennett's claim. The actual explanation of the decision-making process employed simply states that Broadspire did not believe that the submitted documents contained 'sufficient medical evidence . . . to substantiate a significant functional impairment that would prevent[] [] Bennett from performing the essential functions of any occupation.' J.A. at 313 (Final Decision). This reads like a conclusion, not a 'deliberate, principled reasoning process . . . supported by substantial evidence.' *Glenn*, 461 F.3d at 666. Accordingly, we hold that Broadspire's determination cannot withstand scrutiny under the 'arbitrary or capricious' standard of review." *Bennett*, 514 F.3d at 556.

decision in *Bennett v. Kemper Natl. Services, Inc.,* 514 F.3d 547 (6th Cir. 2008), when it decided to deny LTD benefits to her once again on April 10, 2008.

In her motion for entry of judgment, Bennett claims that the Defendants "blatantly disregarded the express directives articulated in the Sixth Circuit's Opinion." In support of this motion, Bennett argues that the denial of her LTD benefits claim on remand by Aetna was "arbitrary and capricious" and deprived her of a "full and fair review" which would be consistent with the Sixth Circuit's "roadmap" for properly evaluating her claim. In her view, the Defendants (1) "did not adequately analyze the Social Security Administration's [] determination that [she] is totally disabled"; (2) "relied solely upon file reviews" in denying [her] LTD benefits; and (3) "ignored every medical professional that actually treated [her] for MS and related debilitating conditions, each of whom unequivocally determined that she is 'disabled' as that phrase is defined in the Plan." In summary, she submits that Aetna's denial is not the result of a "deliberate, principled, reasoning process . . . supported by substantial evidence." *Bennett*, 514 F.3d at 556 (quoting *Glenn*, 461 F.3d at 666).[6] Thus, she asks the Court to reverse the Claim administrator's denial of LTD benefits to her, and issue an order that will reinstate those benefits in full.

---

[6]Bennett argues at some length that the Defendants should not be able to submit copies of additional peer reviews that were performed during the review on remand. She claims that allowing additional peer review files into the record at this stage of the proceedings should not be allowed as "nowhere in Aetna's Denial does it state that Aetna actually relied upon the Remand File Reviews written by Henry Spira, M.D., Lawrence Burstein, Ph.D., and Peter A. Masbach, Ph.D." Bennett also argues that neither Lumbermens nor Aetna requested authority from the Court to supplement the record with additional information. Inasmuch as the Court remanded the case to the Defendants' Claim administrator for a "full and fair review," Bennett's argument on this issue is unavailing. She has failed to demonstrate that the challenged conduct by Aetna is in violation of the directive by the Sixth Circuit in *Bennett* or any other legal authority. Indeed, these additional peer reviews appear to be an effort by the Defendants to comply with the order of February 22, 2008.

Bennett's first major argument is that Aetna's denial lacked "any serious analysis whatsoever, and generally misconstrues the SSA's disability determination." In support of this contention, Bennett notes that Aetna made reference to a 2002 report by Lisak (her treating physician) for the proposition that she "could sit for six hours, could stand or walk for less than an hour and 'could do simple grasping, pulling and fine manipulation with her . . . hands []' and that her condition was 'improving' because she was no longer using a cane to walk," notwithstanding the comment by the Sixth Circuit that it "fail[s] to understand how a person who can sit for only two hours in an eight-hour work day and [who] cannot stand or walk for any appreciable period of time could, nonetheless, work," *Bennett*, 514 F.3d at 555. She also contends that Aetna, like Broadspire Services, has (1) failed to address Lisak's ultimate opinion that she is totally disabled from all employment, and (2) distorted the nature of Keenan's[7] psychological report when incorrectly citing it for the proposition that "[t]he results are strongly suggestive of malingering and making a conscious lack of effort."

Bennett's second primary argument is that Aetna's "exclusive reliance on the remand file reviews (and other file reviews) further evidences the arbitrariness and capriciousness by which [her] LTD benefits claim was denied." Bennett, citing to *Bennett*, 514 F.3d at 554-55, argues that an administrator's decision to conduct a file-only review when it has the right to conduct a physical examination, coupled with the fact that the file reviews were made upon credibility determinations where the reviewers never personally observed her, demonstrates the arbitrary and capricious nature by which the requested benefits were denied. Bennett urges the Court to find that "Aetna's exclusive reliance on file reviews raises, yet again, serious questions about the thoroughness and

---

[7]Keenan is a psychologist who treated Bennett.

accuracy of Aetna's Denial." *Bennett*, 514 F.3d at 554 (quoting *Calvert*, 409 F.3d at 296; *Elliot*, 473 F.3d at 621). To support this claim, Bennett quotes the court in *Bennett*, which observed that the Plan gives "the defendants the right to conduct a physical examination" even though they "opted to rely only on peer reviews of Bennett's files." *Id*. at 555. She concludes by arguing that this failure to conduct a physical examination during its examination on remand, "demonstrate[s] that Aetna's Denial was arbitrary and capricious, that Ms. Bennett was deprived her [right to] a 'full and fair review,' and was not the result of a deliberate, principled reasoning process." *Id.* at 556.

In their "motion for entry of judgment on remand," the Defendants request that the Court enter judgment in their favor pursuant to ERISA because their Claim administrator's decision to uphold the termination of Bennett's claim for LTD benefits "was not arbitrary and capricious." They aver that their Claim administrator, Aetna, "re-reviewed" Bennett's medical history for proof of disability within the definition of the plan and, "following the signposts specifically set out by the Sixth Circuit . . . again concluded that the Plaintiff was not disabled from 'any occupation' during the relevant period . . . ." Finally, the Defendants maintain that this decision was not arbitrary and capricious because its Claim administrator "acted conscientiously and in good faith" when conducting its review of Bennett's claim for LTD benefits on remand.

In essence, the Defendants have made five arguments in support of their motion for entry of judgment on remand: (1) no conflict of interest exists to be considered in applying the arbitrary and capricious standard of review,[8] (2) the Claim administrator specifically addressed the rationale

---

[8]Bennett concedes in her response to the Defendants' motion that "no conflict of interest exists." Hence, the Court will not address this issue.

for reaching a result which was different from the SSA, (3) Bennett's medical records confirm the exaggeration of her self-reported cognitive deficits and other symptoms, (4) the conclusions within Lisak's "attending physician statement" of July 11, 2003 are at variance with the other evidence in the record, and (5) the denial letters from Broadspire Services and Aetna on remand clearly document that Bennett received a full and fair review of her application for LTD benefits.

The Defendants' second argument (the first is uncontradicted) is that their claim administrator "specifically addressed the rationale for reaching a different result than did the Social Security Administration." In support of this argument, they cite to a report by one of their peer reviewers, Dr. Mosbach, who, as a neuropsychologist, "explained in his report what he saw as the error in the SSA's conclusion that Bennett has cognitive difficulties":

> Any cognitive difficulties are associated with claimant's self-reports. She did complete neuropsychological testing which showed that the claimant had evidence of a pattern of exaggerating her cognitive complaints. There is no evidence of cognitive impairment in the submitted medical reports. Thus, the ALJ's report of cognitive impairment appears to be based on subjective reports of the claimant which are not backed by clinical evidence.[9]

The Defendants also contend that their Plan is not bound by the determination of the SSA. Rather, they submit that it is only a factor to be considered when seeking to determine whether the administrator's decision is arbitrary and capricious.

In support of the Defendants' third argument (to wit, that "Bennett's medical records confirm exaggeration of her self-reported cognitive deficits and other symptoms"), the Defendants

---

[9] Despite not having personally examined Bennett, Mosbach appears to question her credibility. In *Bennett*, the court stated that "we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility. Our concerns with the file reviews in this case weigh significantly in favor of a finding that the final decision was arbitrary or capricious." *Bennett*, 514 F.3d at 555-56.

appear to be rearguing an issue that was decided by the Sixth Circuit in *Bennett*. In its decision, the *Bennett* court declared:

> [W]e will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility. Our concerns with the file reviews in this case weigh significantly in favor of a finding that the final decision was arbitrary or capricious." *Bennett*, 514 F.3d at 555.

Despite this clear holding, the Defendants nevertheless argue that one of their post-remand file reviewers found that Bennett performed "only slightly above chance levels" in a "Test of Memory and Malingering" on April 3, 2002, the results of which are "strongly suggestive of malingering and making a conscious lack of effort." The Defendants also point to several instances which "unequivocally document that Bennett's self-reported symptoms demonstrate exaggeration."

In their fourth argument, the Defendants asserts that Lisak's "attending physician statement" of July 11, 2003 is contradicted by other evidence, including his own medical records. They insist that there "is nothing in the record to indicate [that Bennett] is unable to sit for longer than two hours," even though the *Bennett* court found otherwise.

Finally, the Defendants contend that (1) both of their denial letters "document that Bennett received [a] full and fair review" of her claims,[10] (2) their denial letter of April 10, 2008 "expressly addressed each of the issues about which the Sixth Circuit raised concerns."

V.

In *Bennett*, the Sixth Circuit outlined the following standard of review:

> When, as is the case here, the benefit plan gives the claim administrator discretionary authority to determine eligibility for benefits, we will reverse the

---

[10]In *Bennett*, the Sixth Circuit found that the Defendants' first denial was "both arbitrary and capricious." *Bennett*, 514 F.3d at 556.

administrator's decision only if it is arbitrary or capricious. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). Under this standard, we uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks omitted), cert. granted, 76 U.S.L.W. 3017 (U.S. Jan. 18, 2008) (No. 06-923) (cert. granted solely regarding conflict-of-interest issues). Although this standard is deferential, it "is no mere formality." *Id*. Rather, application of the standard requires us "to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Id*. (quoting *McDonald v. W.-S. Life Ins. Co*., 347 F.3d 161, 172 (6th Cir. 2003)).

When determining whether a decision was arbitrary or capricious, we also factor in whether there "existe[d] [] a conflict of interest," whether "the claim administrator[] fail[ed] to give consideration to the Social Security Administration's determination that [the applicant] was totally disabled," *id*., and whether the claim administrator based its decision to deny benefits on a file review as opposed to conducting a physical examination of the applicant. *Calvert v. Firstar Fin., Inc*., 409 F.3d 286, 295 (6th Cir. 2005). Such findings do not change our standard of review, but they do factor into our analysis when determining whether the administrator's decision was arbitrary or capricious. *Id*. (conflict-of-interest context and file-review context); *Glenn*, 461 F.3d at 669 (failure to consider the SSA's determination of disability).

514 F.3d at 552-53.

As stated above, Aetna sent its decision to deny LTD benefits to Bennett on April 10, 2008. The six-page letter upholds the November 21, 2003 decision by Broadspire Services to terminate Bennett's LTD benefits. It explains the provisions of the plan, briefly outlines Bennett's earlier claim for benefits and denial, lists the documents relied upon by file reviewers employed by Aetna, and, in the Defendants' opinion, attempts to address the concerns raised by the Sixth Circuit in *Bennett*. However, for the reasons outlined below, the Court finds that Aetna's letter to Bennett does not comply with the Sixth Circuit's decision in *Bennett* as the administrator's decision does not appear to be the "result of a deliberate, principled reasoning process . . . supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006).

In *Bennett*, the Court found that the Defendants had failed to explain to Bennett why they

reached a conclusion which was contrary to the "totally disabled" determination by the SSA. *Bennett*, 514 F.3d at 556. In its April 10, 2008 letter to Bennett, Aetna discussed the SSA's contradictory finding in the following manner:

> Lastly, the records contain information from the Social Security Administration (SSA) which indicates that the SSA's opinion was that Ms. Bennett's impairments precludes physiological and psychological demands of sustained competitive work activities. As such, SSA benefits were approved, commencing 5/23/01.
>
> The Social Security Administration decision was considered during this review. Of note, the SSA's decision makes reference that Ms. Bennett suffers from Multiple Sclerosis with a history of retrobulbar neuritis of the left eye, cognitive difficulties, seizures, disc herniation at C4-C5-6, depression and status post appendectomy. It was concluded that the severity of Ms. Bennett's condition precludes both the physiological and psychological demands of sustained competitive work activity.
>
> However, the neurological evaluation does not indicate a function impairment due to retrobulbar optic neuritis. In fact, the 11/13/02 medical report document [*sic*] Ms. Bennett's vision acuity was 20/20 corrected, bilaterally; therefore her corrected vision is functional for employment. In addition, the herniated discs noted on the examination record are not impacting Ms. Bennett's ability to function at a sedentary physical demand level.

This effort by the Defendants "to explain why it reached a disability conclusion at odds with the SSA's findings," falls far short of the decision by the Sixth Circuit.[11] *Bennett*, 514 F.3d at 556. First of all, Aetna's denial focuses on Bennett's eyesight which, with or without lenses, has never served as the basis of her claimed inability to work. Second, the Defendants' conclusions in its April 10th letter are again conclusory and cite to no evidence in the record for finding, for example, that "the herniated discs noted on the examination record are not impacting Ms. Bennett's ability to function at a sedentary physical demand level." In summary, the Defendants have failed to

---

[11]In *Glenn*, the court found "an ERISA claim administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." 461 F.3d at 667.

properly address the SSA's determination that Bennett is totally disabled from performing any job in a manner which is consistent with the decision in *Bennett.*

The Defendants also noted that one of its file reviewers found that Bennett was not credible, despite never having physically examined her. Incredibly, Aetna's denial letter to Bennett appears to attack her credibility and accuse her of malingering, even though the Defendants failed to exercise their right under the Plan to physically examine her. For example, on page four of its letter, Aetna - while discussing the Test of Memory and Malingering that Bennett took on April 3, 2002 - wrote: "The results are strongly suggestive of malingering and making a conscious lack of effort." However, the *Bennett* court noted that Keenan (the psychologist who administered this test) found quite the opposite:

> [Bennett's] profile is more suggestive of depression than frank malingering, which was corroborated by objective personality test results. Rather than a conscious attempt to feign cognitive symptoms for monetary secondary gain, [] Bennett has presented as having difficulties adjusting to and accepting the limitations associated with MS." *Bennett*, 514 F.3d at 550.

Aetna also notes in its denial letter that Bennett had exhibited "questionable effort" during a visit on February 13, 2002 to see her physician who had already determined that she should remain from work indefinitely. In another adverse inference regarding Bennett's credibility, Aetna notes that during an April 3, 2002 visit with Keenan, "Ms. Bennett reported that [she] got lost in her home yet according to Dr. Keenan, Ms. Bennett was able to recall fairly specific details about her symptoms and the sort of things she forgets. Of note, Ms. Bennett was able to arrive unaccompanied to her appointment and apparently drove herself."

Aetna's questioning of Bennett's credibility in a denial letter based on another file review appears to weigh "in favor of a finding that the final decision was arbitrary or capricious." *Bennett*,

514 F.3d at 554. The Defendants point to no direct evidence in the record that the physicians who treated Bennett believed that she was not credible.

Finally, in response to the *Bennett* court's statement that "we fail to understand how a person who can sit for only two hours in an eight-hour work day and cannot stand or walk for any appreciable period of time could, nonetheless, work," *Bennett*, 514 F.3d at 555, Aetna's denial letter states that "[t]here was no documentation in these evaluations regarding her inability to sit more than two hours per day." In fact, Lisak indicated in an "attending physician statement" on July 11, 2003 that Bennett was unable to sit for more than two hours. Aetna made this finding contrary to Lisak's opinion during a file review, despite having the right to examine Bennett under the Plan. Again, in *Bennett*, the court stated that "[w]e have similar concerns in the case at bar. Although the policy gave the defendants the right to conduct a physical examination, the defendants opted to rely only on peer reviews of Bennett's files." *Id.* Instead of taking the opportunity on remand to examine Bennett, the Defendants chose to conduct another file review. In *Calvert*, the Sixth Circuit found that "the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan - may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295. The Defendants declined their right to physically examine Bennett under the Plan while (1) challenging her credibility, (2) questioning the findings of Bennett's physician, Lisak, who found that his patient "cannot stand or walk, can sit for only two hours a day, and cannot work," and (3) reaching a conclusion contrary to the findings of the SSA.

VI.

For all of the reasons that have been outlined above, the Court finds that the Defendants

15

have failed to give Bennett a "a full and fair review" which is consistent with the decision of the Sixth Circuit on January 23, 2008 in *Bennett v. Kemper Natl. Services, Inc.,* 514 F.3d 547 (6th Cir. 2008).[12] In its denial letter to Bennett, the Defendants' Claim administrator, Aetna, failed to properly address and justify its variance from the earlier determination by the SSA regarding Bennett's inability to perform work within the national economy in a manner that is consistent with the decision in *Bennett*. Also and notwithstanding the concerns by the *Bennett* court regarding the prior file reviews in this case, the Defendants chose to conduct additional file reviews which questioned the credibility of Bennett and her treating physicians' findings rather than exercising their right under the plan to physically examine Bennett.

Thus, the Court denies the Defendants' motion for entry of judgment and grants Bennett's motion for the same. The Court finds that the Defendants' decision to deny LTD benefits to Bennett was arbitrary and capricious. Accordingly, the Defendants must (1) reinstate Bennett's LTD benefits immediately, (2) pay Bennett all of the LTD benefits to which she is entitled to receive under the Plan, and (3) assume any and all appropriate post-judgment interest. Furthermore, the Court directs its Clerk to refer this matter to Magistrate Judge R. Steven Whalen for his calculation of the appropriate award due to Bennett for items (2) and (3) above, if the parties are unable to reach an agreement on this amount within a period of fourteen (14) days from the entry of this order. Finally, Bennett is ordered to withdraw her motion for attorney fees and costs (Docket #34) and resubmit an amended version of that pleading at the conclusion of the proceedings before Magistrate Judge Whalen or after the parties have reached an accord regarding

---

[12]Interestingly, the Court notes that the Defendants do not even cite the *Bennett* decision in the listing of "Controlling or Most Appropriate Authority" in their motion for the entry of judgment.

16

the amount of the award, whichever comes first.

    IT IS SO ORDERED.


Dated: <u>December 18, 2008</u>             <u>s/Julian Abele Cook, Jr.</u>
    Detroit, Michigan             JULIAN ABELE COOK, JR.
                                             United States District Court Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 18, 2008.

                                                   <u>s/ Kay Alford</u>
                                                   Case Manager